**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 22-cr-00188-PAB-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**1. ENRIQUE GOROSTIETA-GOROSTIETA**

    Defendant.

---

## DEFENSE SENTENCING STATEMENT

---

THE DEFENDANT, Enrique Gorostieta-Gorostieta, by and through legal counsel, Jesse Hall of Masterson Hall, P.C., hereby provides this Court with the following sentencing statement.

1. Mr. Gorostieta is asking this Court to impose a sentence of 33 months in prison, which is the bottom of the guideline range for offense level 14 (criminal history category V), along with one year of supervised release.

2. The prosecution is also asking for a sentence at the bottom of the guideline range, as outlined in the plea agreement. The parties estimate that will be 33 months in prison. *See* ECF 19.

3. U.S. Probation has recommended a midpoint range sentence if Mr. Gorostieta has a total offense level of 15, but they recommend a top of the guideline range sentence if he has a total offense level of 14. In other words, they are recommending a 41-month prison sentence regardless of Mr. Gorostieta's ultimate total offense level, as determined by this Court. *See* ECF 21-1 n. 1.

4.  Mr. Gorostieta believes Probation's recommended sentence effectively denies him credit for participation in the government's fast-track program. This is because, as part of the plea agreement, the prosecution recommends Mr. Gorostieta receive a 1-level downward departure under § 5K3.1 ("Early Disposition Programs") for his compliance with the fast-track program, so he is given a benefit for quickly resolving his case and saving the government time and resources. Along with this, the prosecution is also seeking a sentence at the bottom of the guideline range, whatever that range is once ultimately determined by the Court.

5.  Probation's recommendation of 41 months is at the midpoint of the guideline for Mr. Gorostieta if he had a total offense level of 15 (without fast track); however, this recommendation becomes the top of the adjusted range for Mr. Gorostieta after a departure for his compliance with fast track, which results in a total offense level of 14. By Probation recommending 41 months regardless of Mr. Gorostieta's guideline range, Probation essentially asserts his participation in the fast-track program should have no value. Mr. Gorostieta asks the Court to value his fast-track early disposition and sentence him to 33 months (i.e., the bottom of the guideline range for a total offense level of 14).

6.  Additionally, Mr. Gorostieta believes a sentence to 33 months in prison is appropriate given his background and history and the sentencing considerations described in 18 U.S.C. § 3553(a).

7.  Mr. Gorostieta recognizes the conundrum described in the Presentence Report (PSR) relating to his many ties to the United States and Probation's concerns that he will illegally return to the United States again in the future. Many of Mr. Gorostieta's family members are living in the United States (legally); even his two-year-old son lives here and

is a U.S. citizen.  Mr. Gorostieta was brought to the United States by his parents when he was just seven years old, and he has lived here for the vast majority of his life, where he has studied in school, learned fluent English, maintained employment, and helped take care of his family.  However, Mr. Gorostieta believes the fact he has so many ties to the United States as a result of his parents bringing him and raising him here should not be grounds for additional punishment by this Court.

8. Mr. Gorostieta is currently working with an immigration attorney to obtain legal status in the United States.  He is seeking asylum here as a result of the grave danger he faces in Mexico where the cartel controls everything.  When he was just six years old, Mr. Gorostieta witnessed the cartel murder an adult right in front of him.  Also, two of Mr. Gorostieta's uncles have already been murdered by the cartel.  Mr. Gorostieta asserts his steps to obtain legal status in the United State are evidence of his intention to not return to the United States unless and until he has a legal status to enter.

9. In planning for his eventual removal from the United States, Mr. Gorostieta has taken steps to ensure he has employment waiting for him.  It is in Tijuana, Mexico, where he will work at a tourism call center to help English-speaking tourists planning to visit Mexico.  Because he is fluent in both English and Spanish, he is valuable to the Mexico tourism industry.  He also has friends in Tijuana who will provide him a place to stay when he arrives there.  Mr. Gorostieta asserts his steps to obtain employment and housing in the Mexico is evidence of his intention to not return to the United States unless and until he has a legal status to enter.

10. Mr. Gorostieta was the victim of an attempted murder, which is what led to law enforcement's realization he was illegally in the United States and ultimately resulted in

him being indicted in this federal case.  Mr. Gorostieta was attacked by a stranger who was following him in a vehicle and then got out and began shooting at him.  The police were called to investigate and ultimately learned of his undocumented/illegal status in the United States.  Mr. Gorostieta fully cooperated with law enforcement during their investigation into his attack.  Mr. Gorostieta was told the police concluded the shooting was the result of the attacker misidentifying him and meaning to murder someone else.  To this day, he has no idea why the attacker tried to shoot and kill him.

11. Mr. Gorostieta also has three pending criminal cases in Colorado state court (two felony cases and one misdemeanor case).  As this Court is abundantly aware, Mr. Gorostieta is presumed innocent of these charges, and this presumption of innocence remains with him unless and until a jury convicts him, based upon evidence proving him guilty beyond a reasonable doubt (or, alternatively, if he knowingly, voluntarily, and intelligently pleads guilty to any of these charges).  *See Estelle v. Williams*, 425 U.S. 501, 503 (1976) (citing *Coffin v. U.S.*, 156 U.S. 432, 453, (1895)) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.");  *see generally Cool v. U.S.*, 409 U.S. 100, 104 (1972) (referring to the "constitutionally rooted presumption of innocence");  *see also United States v. Starks*, 34 F.4th 1142, 1158 (10th Cir. 2022) (citing *Mahorney v. Wallman*, 917 F.2d 469, 472 (10th Cir. 1990) (*per curiam*)) (noting the presumption of innocence is a "constitutionally rooted…basic right…");  *Zygadlo v. Wainwright*, 720 F.2d 1221, 1223 (11th Cir. 1983) ("The constitution grants every defendant a presumption of innocence").  Undersigned counsel has also discussed these cases with Mr. Gorostieta and his attorney and

confirmed they intend on taking these cases to trial.  Mr. Gorostieta believes this Court should afford little to no weight to the fact he has pending accusations against him in determining and fashioning an appropriate sentence for him in this federal case.

WHEREFORE, the defendant respectfully requests a sentence of 33 months in prison and one year of supervised release.

Respectfully submitted,

Dated:  December 30, 2022

s/ Jesse D. Hall
**Jesse D. Hall**
Masterson Hall, P.C.
1544 Race Street
Denver, CO 80206
Phone:  720-445-5505
Email:  hall@mastersonhall.com
Attorney for Defendant

## **CERTIFICATE OF SERVICE**

  I hereby certify on December 30, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to all attorneys of record.

                s/ Jesse D. Hall
                *Jesse D. Hall*